UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. WILLIAMS,<br><br>                Plaintiff,<br><br>    vs.<br><br>JO ANNE B. BARNHART, Commissioner<br>of Social Security Administration,<br><br>                Defendant. | CASE NO. CV 05-00147 (RZ)<br><br>MEMORANDUM OPINION AND ORDER |

        This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and each party has filed a supporting memorandum. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

        Plaintiff charges that the Administrative Law Judge "failed to properly consider [his] obesity pursuant to SSR 02-01p." In *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), the Ninth Circuit remanded for a consideration of the plaintiff's obesity

pursuant to SSR 01-01p as it might impact her other impairments, even though the plaintiff had not explicitly raised obesity as an impairment. However, the Court of Appeals subsequently noted in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), that *Celaya* was premised on three factors, none of which was present in *Burch*: (1) the plaintiff had raised the impairment implicitly, if not explicitly; (2) the impairment was close to listing-level severity; and (3) the plaintiff appeared without counsel. Thus, it appears that a central concern of *Celaya* was that the Administrative Law Judge simply may have overlooked the claimant's obesity as a potential complicating factor that at least merited some analysis.

This case differs from *Celaya* as to the third factor, for Plaintiff was represented in administrative proceeding by counsel, but it is similar to *Celaya* in the other two ways distinguished in *Burch*. (This case also differs in a fourth respect, namely the state of the law when Plaintiff first asserted his possibly-obesity-related disability. Carmen Celaya alleged disability *prior* to the removal of obesity as an independently-listed impairment effective October 1999, *see Celaya*, 332 F.3d at 1181 & n.1; 64 Fed. Reg. 46,122 (1999), but Plaintiff Williams's alleged disability did not begin until *after* that removal. This difference suggests that being "at least close to the listing criterion" for obesity, *Celaya*, 332 F.3d at 1182, may be less legally significant for Plaintiff than it was for Celaya.)

But this case appears similar to *Celaya* as to the other two of three factors noted in *Burch*. First, the medical evidence implicitly raises obesity as a potential complicating factor. That Plaintiff is a man of prodigious size is obvious from the record, and not merely because he stands six feet four inches tall. He testified at the 2003 hearing that his then-current and usual weight was 275 pounds [AR 275], and his weight was recorded as 296 pound and even 313 pounds in April 2001, about ten months after his last insured date. [AR 186, 192] Although Plaintiff cites no doctor's opinion expressly labeling him as "obese," there is at least one such reference, recorded *prior* to Plaintiff's last insured date, by UCLA physician Gary Ghiselli, M.D., on January 4, 2000, during a visit relating to Plaintiff's December 17, 1999 compound fracture of his right ankle. [AR

115 (noting history of hypertension and hypothyroidism, and observing Plaintiff's otherwise healthy abdomen to be "obese")] Second, Plaintiff certainly meets the current test for obesity set out in Defendant's regulations, regardless of whether he met what would have been a listing-level of obesity prior to October 1999. Currently, the Social Security Administration employs the National Institutes of Health's definition of obesity, meaning a Body Mass Index (BMI) over 30. *See* SSR 02-01p. "Body Mass Index is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$)." *Id.* Even if one employs Plaintiff's lowest-recorded weight in the record, 275 lbs. (125 kg.), his BMI is 33.5, suggesting obesity at least in the technical, regulatory-definitions sense, although it is not necessarily clear from this record whether Plaintiff's weight is disproportionately comprised of excess body fat. *See* SSR 02-01p.

It is unclear whether *Celaya* or *Burch* controls this case, given the imperfect alignment of the facts here with those of either precedent. Even in *Burch*, however, the Administrative Law Judge at least briefly discussed the impact of the claimant's obesity on her other ailments, although in that case the judge found the impact to be minimal. Here, in contrast, the Court is troubled by the absence of even a brief analysis by the Administrative Law Judge of the *possible* impact of Plaintiff's heaviness on his other documented medical conditions. Accordingly, the Court will remand the action for such analysis and other administrative proceedings consistent with this opinion – although the Court expresses no view whatsoever on the propriety of an ultimate award of benefits.

\*   \*   \*

For the foregoing reasons, the decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with this opinion.

DATED:   March 16, 2006

> *>/s/ Ralph Zarefsky*
> RALPH ZAREFSKY
> UNITED STATES MAGISTRATE JUDGE